ZACHOS *v.* HUIET, commissioner.

No. 14444. APRIL 14, 1943. REHEARING DENIED MAY 6, 1943.

784

*Noah J. Stone,* for plaintiff in error.

*Smith, Smith & Bloodworth* and *Croom Partridge,* as amici curiæ.

*A. L. Henson, Clifford Walker,* and *Otis L. Hathcock,* contra.

REID, Chief Justice. ■ Unless Brown, Wood, Pyles, and Gabbert were employees within the meaning of the Georgia unemployment compensation law, Zachos did not owe the contribution sued for; for, without the four named, he did not for the year 1940 have the required number of employees to bring him under the provisions of the act. The preceding statement discloses all the evidence bearing on the question as to whether they were employees. In our judgment they were not. In selling paint these men worked

for themselves. They were paid the difference between what the paint cost them and what they sold it for to the customer. They were in business for themselves. They were not required to work any number of hours in any particular day, or to see any number of persons on any one day, week, or month, or to make reports when sales were made. No territory was designated for them, and no employment of their time or services was had. They were not employees within the meaning of the act to be found in the Cumulative Supplement to the Annotated Code of 1933 as section 54-601 et seq.

■ Among the definitions given in the act (Cumulative Supplement, section 54-657, (N)-(n)), the word *wages* is defined as meaning "all remuneration for personal services, including commissions and bonuses, and the cash value of all remuneration paid in any medium other than cash." Section (B) (6) declares as follows:

"Services performed by an individual for wages shall be deemed to be employment subject to this chapter, unless and until it is shown to the satisfaction of the commissioner that:

" (A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

" (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

·' (C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business."

If the verdict rendered in this case can be sustained upon any theory at all, it is that it was not shown to the satisfaction of the commissioner that the individuals come within the conditions named in subsections (A), (B), and (C), next above quoted. The effect of such a ruling would be to uphold a finding that the plaintiff in error should be compelled to make these named contributions, not because he was liable for them, but because it was not shown to the satisfaction of the commissioner that he was not liable. As to other decisions made by those charged with the administration of the act, there is a provision expressly providing a Board of Review to hear and decide appealed claims (Cumulative Supple-

ment, § 54-612 et seq.), with the right given to the aggrieved party to institute in the superior court an action against the commissioner for the purpose of having the court review his decision (Cumulative Supplement, § 54-619); but in the provision of the act here under attack there is no such right of appeal. If the person on whom demand is made for the contribution fails to satisfy the commissioner, he is at the end of his rope, so far as escaping liability. What the facts may be makes no difference. If, as was said by the Supreme Court in Western & A. R. v. Henderson, 278 U. S. 577 (49 Sup. Ct. 176, 73 L. ed. 516), "Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property," a fortiori the finding of a bureau chief or a government department-head ruling can not do so, consistently with the guarantees embodied in the constitutions of this State and of the United States. The protective principles summed up in these due-process clauses extend to every proceeding which may deprive a person of life, liberty, or property, whether the process be judicial or administrative or executive in its nature. 16 C. J. S. page 1155, § 569; and especially Board of Levee Commissioners of Fulton County v. Johnson, 178 Ky. 287 (199 S. W. 8, L. R. A. 1918E, 202); People v. Scott, 326 Ill. 327 (157 N. E. 247).

The case of Toplis and Harding Inc. v. Murphey, decided by the Supreme Court of Illinois on January 19, 1943, has been examined and nothing therein decided constrains us to uphold, as against the constitutional attack, the provision of the Georgia act immediately involved. The commissioner of labor can not base his right to recover in the instant case on the fact that it has not been shown to his satisfaction that the three situations mentioned in subsection 6, (A), (B), and (C), quoted above, exist. In so far as those portions of the act attempt to do so they violate the due-process clauses of the State and Federal constitutions.

3.. Other points made in the motion need not be considered, since the rulings above announced are controlling. The verdict being contrary to law and without evidence to support it, a new trial should have been granted.

*Judgment reversed. All the Justices concur.*